*James L. Taft, James F. Murphy, John F. McKenna,* for defendant.

HERMAN BAUMGARTNER *vs.* BERTHA H. SEIDEL *et al.*

APRIL 11, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

O'CONNELL, J. This cause is before us on respondents' appeal from a final decree of the superior court granting the complainant's prayer for enforcement of an oral agreement to devise a certain parcel of real estate located in the

city of Pawtucket, and for incidental relief. The respondents are the brother and sister of the complainant, their respective spouses, and Lawrence A. McCarthy, who is administrator *c. t. a.* of the estate of complainant's deceased father, Gustav Baumgartner.

The bill alleges that in February 1931, following the death of his wife, Gustav Baumgartner promised and agreed that if the complainant would continue to live in the family homestead, pay him $4 per week and take care of and support him, he would convey or devise said premises to the complainant; that the latter accepted said promise and agreement; that he and his wife cared for, supported and nursed Gustav Baumgartner from thence until his death and paid him $4 each week during that period; that he also expended large sums of money in the upkeep, reparation and improvement of the homestead property and has in every respect performed his part of the agreement; and that Gustav Baumgartner died in Pawtucket on May 23, 1945 at the age of ninety-three years without having conveyed or devised the premises to complainant in accordance with his agreement.

The bill further alleges that on August 22, 1945 the probate court of Pawtucket admitted to probate an instrument in writing dated June 14, 1922, which purported to be the last will and testament of Gustav Baumgartner, devising and bequeathing to his wife Mary Baumgartner, who deceased intestate in February 1931, the family homestead involved herein; that Mary Baumgartner was the mother of the complainant and the respondents Bertha H. Seidel and Gustave Gardiner; and that the respondent Lawrence A. McCarthy was appointed administrator *c. t. a.* of the estate of Gustav Baumgartner, has qualified and is acting in such capacity.

The bill also alleges that the respondents Seidel and Gardiner claim to hold the real estate described in the bill of complaint free and clear of any right, title or interest on the part of the complainant, save his right as one of the

heirs at law of his father, and have refused to convey their interest in said real estate to the complainant. Complainant prays that he be decreed to be entitled to the real estate as owner in fee simple, and that the respondents Seidel and Gardiner be directed to convey their respective interests therein to him. In effect the bill seeks to have said respondents declared to be trustees of the homestead estate for the benefit of complainant.

The complainant presented evidence to the effect that he had lived with his parents until his marriage in 1917; that thereafter he continued to live there with his wife until his mother's death in 1931, paying board at $8 per week; that he and his wife were childless; and that upon his mother's death he advised his father that he was going to find a home elsewhere, but his father requested and induced him to remain upon the promise to devise to him the homestead property, a two-story cottage of six rooms, upon fulfillment of the conditions hereinbefore mentioned.

Complainant testified that pursuant to this agreement he paid his father $4 a week until his death, and that he and his wife cared for him during all the intervening years, his wife providing his meals without cost, taking care of his laundry, pressing his clothes, helping him to dress and undress, and generally assisting him in any way necessary because of his advancing years. He further testified that he took care of the premises, doing part of the work himself, made all necessary repairs and improvements, and presented evidence, largely by way of receipted bills, indicating that he had expended more than $1000 of his own money upon property which cost only $1700 when purchased by the decedent. His wife corroborated his testimony as to the agreement and the services rendered by her husband and herself in accordance therewith.

The respondents objected to the introduction of testimony as to the alleged oral agreement claiming the benefit of the statute of frauds, but such testimony was admitted by the trial justice on the ground that the complainant was

entitled to present evidence to show such valuable consideration and part or complete performance by him as would overcome the defense of the statute of frauds. General laws 1938, chap. 481, §1.

Both the respondent Gustave Gardiner, whose name had been legally changed from Gustave Baumgartner, and his sister Bertha H. Seidel denied any knowledge of the alleged agreement and claimed that they never heard it mentioned until after their father's death. They had their own families, visited their father only occasionally, and did not deny that he was well cared for and made no complaints about his treatment. Nor was there any denial that the property was well kept up and improved by the complainant.

Although the bill alleges an agreement to convey or devise the premises to the complainant, the testimony of the complainant and his wife and the conduct of the parties toward each other as disclosed in the transcript establish an agreement to devise the property by will, to become effective on the death of the decedent.

Respondents argue that the decision of the trial justice was erroneous in that he confused the rule as to the fair preponderance of evidence with the rule of law which should be applied in the instant case, viz., that the complainant should be required to prove his case by testimony which is clear and convincing. We cannot agree with this contention. The transcript, which we have carefully examined, shows that the trial justice found, in rendering his decision, that the complainant had established the agreement as alleged; that there was ample consideration therefor; and that there had been such performance thereof by the complainant, in addition to the substantial improvements to the property, as to take the agreement out of the statute of frauds.

After discussing the existence of the oral agreement and its performance by the complainant, the trial justice stated: "Now there isn't any question in my mind but what the

petitioner has proved by clear, convincing evidence these facts I have just commented on." It is evident that he was aware of the law that agreements of the kind involved in the instant cause should be viewed with suspicion and should be established only when clear and convincing proof thereof has been presented, because in his decision he referred to the case of *Johnson* v. *Johnson,* 51 R. I. 296, which involved an oral agreement to convey real estate by deed, and wherein the above rules are laid down, and also to the case of *Deatte* v. *Duxbury,* 66 R. I. 1, where the alleged oral agreement was to make a will in the complainant's favor and wherein the court stated that such an agreement could be established only upon clear and convincing evidence. We are of the opinion that the trial justice applied the correct rule of law in evaluating the evidence presented.

We have carefully considered the objections of the respondents to the sufficiency of the evidence to show such acts of part performance as would take the cause out of the statute of frauds. The record discloses that after the oral agreement was made, the status of the complainant and his deceased father immediately changed. Before that time the complainant and his wife were living with the father as boarders. After the agreement the father lived with the son who abandoned his intention of making a home for himself elsewhere, and took possession of and control over the homestead estate, occupied, managed and cared for the property, expended a large amount of money in its upkeep, and made extensive repairs some of which were of a permanent nature. These acts appear to have been done in reliance upon the oral agreement.

We are of the opinion that such acts of possession, occupancy, repair, improvement and management of the real estate involved herein, together with the care and support of the deceased promissor over a period of more than fourteen years, constitute sufficient part performance to take this cause out of the statute of frauds.

From a careful examination of the transcript we cannot say that the evidence upon which the trial justice relied was inherently improbable or that he overlooked or misconceived any material evidence. Nor can we say that his decision was clearly wrong. In these circumstances the decree based thereon should not be disturbed.

The respondents' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

### ON MOTION FOR REARGUMENT.

#### AUGUST 17, 1949.

PER CURIAM. After our opinion was filed in this cause, the respondents requested and received permission to file a motion for leave to reargue.

We find therein no new matter which was not considered in our original opinion. Respondents contend that the statement of the court that "after the oral agreement was made, the status of the complainant and his deceased father immediately changed" amounts to a holding that thereupon the relationship of landlord and tenant was at once created. Such conclusion does not follow from any express language contained in our opinion. We intended by the quoted language merely to state that after the agreement the son, who previously was a boarder with his wife in his father's home, became the head of the household and undertook the care and support of his father and other obligations in exclusive reliance upon and for the purpose of carrying out the terms of the mutual agreement. No relationship of landlord and tenant was created thereby.

Respondents further contend that while we recognized the rule that in order to take an oral agreement out of the statute of frauds the part performance relied on must be exclusively referable to the agreement, we nevertheless failed to apply it. This conclusion follows, they argue, because we merely stated that "These acts *appear* to have been done in reliance upon the oral agreement." (italics

ours) The word "appear" was not there used by us as construed by the respondents. We then clearly had in mind the principle of law relating to the "exclusive referability" rule and by the above-mentioned language we meant that the acts appearing in evidence as set forth in our opinion were not done merely because of a general reliance upon the oral agreement but were performed exclusively with reference thereto.

The motion is denied.